NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 21, 2026

S25Y0888. IN THE MATTER OF MYLEE MCKINNEY.

PER CURIAM.

The current disciplinary matter is before the Court on the report of a Special Master who referred part of a Notice of Discipline that was originally filed in March 2025 back to this Court. As relevant here, the Notice of Discipline initially sought to disbar Mylee McKinney (State Bar No. 122143) based on her misconduct in the representation, and ultimate abandonment, of nine clients, whom she represented primarily in child custody and divorce matters.[1] Although McKinney attempted to reject the Notice of Discipline within the time required by the Rules of Professional Conduct, the Bar argued that her efforts were inadequate and

---

[1] These nine client matters are referenced herein as State Disciplinary Board ("SDB") Docket Nos. 7996, 7997, 7998, 7999, 8000, 8001, 8002, 8003, and 8004.

insufficient and requested that this Court disbar her without additional process because McKinney failed to timely provide a sworn response. See Bar Rule 4-208.1(b) ("Unless the Notice of Discipline is rejected by the respondent as provided in Rule 4-208.3, (1) the respondent shall be in default; (2) the respondent shall have no right to any evidentiary hearing; and (3) the respondent shall be subject to such discipline and further proceedings as may be determined by the Supreme Court of Georgia."); Bar Rule 4-208.3(b) ("In accordance with Rule 4-204.3 if the respondent has not previously filed a sworn response to the Notice of Investigation the rejection must also include a sworn response in order to be considered valid.)

In May 2025, the Court referred this matter to Special Master Patrick E. Longan to determine whether McKinney ought to be deemed to be in default because her otherwise timely rejection of the Notice of Discipline failed to include a sworn response to the underlying Notices of Investigation as required by Bar Rule 4-208.3(b). See Case No. S25Y0888 (May 6, 2025). Upon referral, the

Special Master held a hearing and issued a report in which he determined that McKinney was not in default with respect to two client matters for which she had previously filed sworn responses[2] – those being SDB Docket Nos. 7997 and 8001; that she was in default with respect to allegations in the remaining seven cases that she violated Rules 1.2(a), 1.3, 1.4(a)(1)–(4), 1.5(a), 1.16(d), and 3.2; and that the allegations in those seven cases that she violated Rule 8.4(a)(4) should be re-opened and referred to the State Bar to file a formal complaint. However, given the posture of this case and this Court's "strong preference for deciding cases on their merits," *In the Matter of Bonnell*, S25Y0965, slip. op. at 12 (Ga. Sept. 16, 2025) (2025 WL 2646140), the Court hereby rejects the Special Master's report and remands the matter to the State Bar to file a formal complaint to pursue the allegations that the Special Master

---

[2] After the State Bar filed a formal complaint as to the two clients, McKinney acknowledged service but thereafter did not file an answer or otherwise respond. Accordingly, the Special Master entered an order granting the State Bar's motion for default. That matter is now back again before this Court on the report and recommendation of the Special Master to disbar McKinney and remains pending. See Case No. 26Y0581.

determined had been admitted by default based on not including sworn responses.

1. *Procedural History*

On March 26, 2025, the State Bar filed its Notice of Discipline related to nine clients. The Notice provided that after a full investigation, the Board found probable cause to believe that McKinney violated Rules 1.2(a) (lawyer shall abide by a client's decisions concerning the scope and objectives of representation), 1.3 (lawyer shall act with reasonable diligence and promptness in representing a client), 1.4(a)(1)–(4) (lawyer should keep client reasonably informed, reasonably consult with client about matters, and promptly comply with reasonable requests for information), 1.5(a) (lawyer shall not collect an unreasonable fee), 1.16(d) (lawyer shall take steps to the extent reasonably practicable to protect a client's interests), 3.2 (lawyer shall make reasonable efforts to expedite litigation), and 8.4(a)(4) (lawyer shall not engage in professional conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Georgia Rules of Professional Conduct

4

found in Bar Rule 4-102(d). The maximum penalty for a violation of Rules 1.2(a), 1.3, and 8.4(a)(4) is disbarment. The maximum penalty for a violation of Rules 1.4(a), 1.5(a), 1.16(d), and 3.2 is a public reprimand.

McKinney acknowledged service of the Notice of Discipline on April 2, 2025. McKinney then filed a document entitled "Rejection of Notice of Discipline" on May 2, 2025, but that rejection included no sworn responses to the underlying Notices of Investigation, and thus, was invalid as to all the clients except two for whom she had previously submitted sworn responses after receiving the initial Notices of Investigation from the State Bar. See Rule 4-208.3(b). Three days later, on May 5, 2025, McKinney apparently recognized her error and filed a document entitled "Amended Rejection of Notice of Discipline" in which she provided a sworn response that referenced all nine cases by their SDB docket numbers; admitted to the conduct that constituted violations of Rules 1.2(a), 1.3, 1.4, and 3.2; and stated that she was prepared to provide restitution to each aggrieved party. McKinney also detailed some of her mental health

challenges, noting that during the time period of her misconduct she began experiencing severe mental health issues that caused her to "not see a point in responding" to the grievances, but she explained that she has been making steady progress with her mental and emotional health and that she felt like she had "been given a second chance to right [her] wrongs."

The State Bar filed a response and stated that the rejections were inadequate and insufficient because: (1) the May 2 rejection failed to include sworn responses; (2) the May 5 rejection was untimely; and (3) the response attached to the May 5 rejection actually admitted that McKinney violated Rules 1.2(a), 1.3, 1.4, and 3.2 in at least seven matters. The Bar further noted that McKinney alleged that she intended to file a Bar Rule 4-227 Petition for Voluntary Discipline as to these rule violations, but no such petition had been filed. McKinney also admitted that she owed restitution to the clients, but had not paid them, nor made any arrangements to pay. Thus, the State Bar asked that this Court disbar McKinney based on the Notice of Discipline and her purported admissions to

6

violations of the Georgia Rules of Professional Conduct. McKinney responded, contending that her rejections should be considered timely and in compliance with Bar Rule 4-208.3 (b). She also claimed that since the amended rejection had been filed, "refunds have been provided to all parties involved excluding [two client] matters," but she offered no documentation in support.

2. *Our May 6, 2025 order*

When the matter was initially presented to this Court, we issued an order referring the matter to a Special Master to determine whether McKinney ought to be deemed to be in default as to the Notice of Discipline. We further directed that if the Special Master determined that McKinney was in default, the Special Master should refer the matter back to this Court for further proceedings on the Notice of Discipline and default, but if the Special Master ultimately determined that McKinney was not in default, then it should direct the State Bar to file a formal complaint and proceed in the ordinary course thereafter.

3. *Proceedings before the Special Master*

7

The Special Master held a status hearing and following the hearing, the Special Master notified the parties of his preliminary conclusion that McKinney was in default but provided her with the opportunity to file a motion to open default.

(a) *Motion to open default*

McKinney filed a motion to open default and brief in support. In it, she argued that she had fulfilled all of the conditions precedent to opening a default under OCGA § 9-11-55(b)[3] because she filed her amended rejection along with the required responses under oath to the previously issued Notices of Investigation on May 5, 2025, and "announce[d]" that she was ready to proceed with trial and any evidentiary hearing to be held in the matter. Moreover, she argued that the case here clearly demonstrated a "proper case" for opening default because depriving her of her license to practice law without

[3] OCGA § 9-11-55(b) provides that "[a]t any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial."

the ability to have this matter evaluated on the merits would present a situation where injustice might occur. In addition, she noted that there had been no showing that the State Bar would be harmed or prejudiced if the alleged default was opened; rather, the State Bar had every right to proceed against her "through the formal process" which would also allow her the ability to defend herself. And, while she acknowledged her initial failure to respond to each Notice of Investigation, she stated that all responses to grievances had now been provided, "restitution to all clients ha[d] been made," and she acknowledged accountability for her failures and had shown remorse for the same. Finally, she claimed that there had been no showing that she willfully ignored the Notice of Discipline or that gross negligence was involved.

(b)   *State Bar's response*

The State Bar responded and asked that the Special Master dismiss McKinney's motion to open default, contending that such a motion is not applicable to a lawyer's failure to reject a Notice of Discipline under the Bar Rules. The State Bar noted that Bar Rule

4-221.2(b) provides that "[i]n all proceedings under this Chapter occurring *after a finding of probable cause as described in Bar Rule 4-204.4*, the procedures and rules of evidence applicable in civil cases under the laws of Georgia shall apply, except that the quantum of proof required of the State Bar shall be clear and convincing evidence." (emphasis supplied by State Bar). The State Bar also noted that whenever the State Disciplinary Board has directed the filing of a Notice of Discipline, a finding of probable cause has necessarily occurred, potentially triggering application of the Civil Practice Act ("CPA"). However, it contended that Notices of Discipline are sui generis, and thus, they have no analog in the civil law, such that there is no "automatic" basis for using § 9-11-55(b) to open a failure to reject a Notice of Discipline as if it were a default on a formal complaint.

Alternatively, the State Bar argued that, even if the statute were applicable, McKinney's motion should be denied because she failed to set up a "meritorious defense," which is a condition precedent to opening default, see OCGA § 9-11-55(b), given her

10

admission to certain violations. Moreover, the State Bar provided that another "condition precedent" in § 9-11-55(b) is the requirement that the party in default "offer to plead instanter" and while nothing stood in the way of McKinney submitting a Bar Rule 4-227(b) Petition for Voluntary Discipline directly in this Court, she failed to do so (despite claiming at the status hearing that she would). The State Bar further argued that McKinney had not shown "excusable neglect" as a basis to set aside her failure to reject the Notice of Discipline. Indeed, her failure to follow the rules, by filing a timely and adequate rejection or even a response to the Notices of Investigation, further showed a lack of competence.

Finally, the State Bar contended that this was not a "proper case" to set aside McKinney's failure to reject the Notice of Discipline according to the Bar Rules. The State Bar contended that, standing alone, the prospect of McKinney losing her law license did not present a "proper case" to give her more "bites at the apple" that she already "discarded" by not following the Rules in the first place. Moreover, it contended that McKinney was incorrect in her claim

11

that "the evidence establishes" that she has "timely and fully participated in all aspects of the above-captioned matters" as she failed to properly reject the Notice of Discipline on time and even failed to file her motion to open default correctly. The State Bar stated, "[g]ood for [McKinney] having paid restitution to 'all clients' – but she only did so after the State Bar filed Notices of Discipline for Disbarment in a total of [11] matters, which has little if any mitigating effect." See *In the Matter of Brantley*, 311 Ga. 61, 65 (2021) (stating that "[t]he fact that [Brantley] has made restitution carries no mitigating weight given that she did so only after the initiation of disciplinary proceedings"). Moreover, the State Bar noted that this Court could still choose to consider the information she provided in her amended rejection, including her mental health challenges, as it is ultimately up to the Court to consider what it needs to look at when a lawyer is in default and also the appropriate level of discipline. Finally, the State Bar contended that unnecessarily broadening the proceedings by requiring a formal complaint at this point would have the effect of prejudicing the State

Bar, the State Disciplinary Review Board, "and the proceedings, and the rules" given that McKinney already admitted violating multiple rules.

4. *The Special Master's Report*

The Special Master issued his final report, in which he granted in part and denied in part McKinney's motion to open default. As an initial matter, the Special Master concluded that McKinney did not default with respect to two matters – SDB Docket Nos. 7997 and 8001 – because she responded to the Notices of Investigation within the time limit set by Bar Rule 4-204.3. Accordingly, the Special Master directed the State Bar to file a formal complaint and proceed in the ordinary course as to those two matters.

However, the Special Master concluded that McKinney defaulted with respect to the other seven matters, because she did not respond to the Notices of Investigation regarding these clients, nor did she include sworn responses to them in her timely May 2 rejection. As to the State Bar's argument that § 9-11-55(b) does not apply to defaults regarding notices of discipline, the Special Master

13

acknowledged that there was very little case law about opening default in these circumstances but correctly noted that this Court has indicated that it would be appropriate. See *In the Matter of Blount*, 264 Ga. 539, 539 (1994) (noting that after this Court disbarred Blount on a notice of discipline, "Blount filed a timely motion for reconsideration claiming that he had a meritorious defense and that his failure to timely respond was due to a medical condition," and that this Court granted the motion, vacating the order of disbarment and remanding the matter to the Investigative Panel, to hear evidence on certain issues and make findings of fact and conclusions of law); see also *In the Matter of Fair*, Case No. S10Y1025 (July 27, 2010) (vacating order of disbarment following Notice of Discipline where attorney had defaulted and remanding the case for appointment of a special master to (among other things) "hear evidence and make findings on whether Fair's physical, mental, and emotional problems [as highlighted in his motion where he claimed he had a meritorious defense for failing to respond] prevented him from filing a timely response to the Notice of

14

Discipline"). Based on these cases, the Special Master concluded that McKinney's default may be opened upon a proper showing.

The Special Master then concluded, however, that McKinney had only presented a meritorious defense as to the allegations that she violated Rule 8.4(a)(4) in the seven remaining matters. McKinney admitted under oath in her amended rejection that she violated Rules 1.2, 1.3, 1.4, and 3.2, and although she did *not* refer to the alleged violations of Rules 1.5(a) and 1.16(d), she did not contest those allegations either. Accordingly, the Special Master denied the motion to open default with respect to those allegations. See *Alexander v. Francis*, 369 Ga. App. 580, 588 (2023) (noting in civil case that default can be entered on the issue of liability alone). The Special Master concluded, however, that McKinney had made a proper case for opening default with respect to Rule 8.4(a)(4), because she denied any intent to defraud, deceive, or act dishonestly. See, e.g., *In the Matter of West*, 301 Ga. 901, 904 (2017) (noting that Rule 8.4(a)(4) contains an implicit intent requirement). See also *Bowen v. Savoy*, 308 Ga. 204, 208, 209 (2020) (concluding that

15

"proper case" under OCGA § 9-11-55(b) permits "the reaching out to take in every conceivable case where injustice might result if the default were not opened" and that courts have "ample powers" to open default to keep with the policy of deciding cases on the merits). Moreover, the Special Master noted that this Court's specific guidance in deciding whether to open default is to determine whether the "defendant's failure to file a timely answer … resulted from willful or gross negligence" and to consider "whether the plaintiff will be harmed or prejudiced by opening the default." Id. at 208–09.

Here, the Special Master determined that injustice likely would result if default was not opened as to the Rule 8.4(a)(4) violations for the seven remaining matters because it is among the most serious types of misconduct, and with such a violation, McKinney faced the prospect of significant discipline. Also, the Special Master concluded that McKinney's failure to file an adequate and timely Notice of Rejection was not the result of willful or gross negligence. She attempted to correct her mistakes by curing

16

the requirement that her answer be sworn and while she misunderstood what was required, this resulted from mere negligence on her part. The Special Master also concluded that the State Bar had failed to show prejudice would result from opening default, as "[r]equiring the State Bar to file a formal complaint if it chooses to pursue [Rule 8.4(a)(4)] allegations is not an undue burden, given the consequences to McKinney of a finding of [such a] violation." In sum, the Special Master determined that McKinney was not in default with respect to the two client matters for which she had filed sworn responses; that she was in default with respect to allegations in the seven remaining cases that she violated Rules 1.2(a), 1.3, 1.4(a)(1)–(4), 1.5(a), 1.16(d), and 3.2; and that the allegations in those seven cases that she violated Rule 8.4(a)(4) should be opened and referred to the State Bar to file a formal complaint.

After the matter was referred in part back to this Court, the State Bar notified the Court of its election not to proceed on the allegations that McKinney violated Rule 8.4(a)(4) in the remaining

17

seven matters. The State Bar stated that having reviewed McKinney's responses to the Notices of Investigation and her testimony during the hearing regarding her intentions and the circumstances when she agreed to represent the seven clients, it had concerns about meeting its burden to prove by clear and convincing evidence that she violated Rule 8.4(a)(4). Thus, those Rule violations are no longer before us, but we still must consider whether the Special Master erred in failing to open default in full.

*5. Analysis and Conclusion*

We conclude that default should have been opened as to all pending matters, and not just the ones for which McKinney filed a timely sworn response, so the State Bar should file formal complaints as to the seven remaining matters for the Rules violations that are still outstanding. We have held that OCGA § 9-11-55(b), which governs the process for opening defaults, applies in disciplinary proceedings. See e.g., *In the Matter of Turk*, 267 Ga. 30, 30 (1996). OCGA § 9-11-55(b) provides in relevant part that "the court, in its discretion … may allow the default to be opened … where

the judge, from all the facts, shall determine that a proper case has been made for the default to be opened." In *Bonnell*, we recently held that "the proper-case ground for opening default should be liberally applied so as to keep with the policy of deciding cases on their merits" and that "[s]uch considerations for determining whether the proper-case ground should apply include whether the failure to file a timely answer resulted from 'willful or gross negligence' and whether the other party 'will be harmed or prejudiced by opening the default.'" S25Y0965, slip op. at 14. Moreover, we held that "where an attorney who is participating in the disciplinary process is unreasonably deprived of the opportunity to defend the charges against him, due process concerns may arise." Id. at 13.

Here, we agree with the Special Master that McKinney's failure to file an adequate Notice of Rejection on time was not the result of willful or gross negligence; rather, it appears to have been simple negligence on her part, and she promptly corrected her error on the next business day by filing an amended rejection with sworn responses. The State Bar has also failed to show that it will be

19

harmed by opening default. While the State Bar contends that allowing this case to proceed before a Special Master will prejudice the State Bar and the "proceedings and the rules," there are currently at least four other pending matters regarding McKinney that are being considered by the State Bar, so it is difficult to see how providing the additional process in these seven matters will cause harm, given that the Bar and the Special Master have other ongoing matters with McKinney.

Of course, it is true that McKinney only challenges some of the allegations in her answer and seemingly has admitted to multiple rule violations, which the Special Master reasoned showed that McKinney did not present a meritorious defense to those claims. However, she did not admit to violating Rules 1.5 or 1.16(d), and more importantly, McKinney did not admit that disbarment was the appropriate discipline for the admitted rules violations, instead asserting mitigating circumstances in her sworn response. Although we have specifically said that the "proper-case ground" for opening default "should be liberally applied so as to keep with the

policy of deciding cases on their merits," see id. at 634, we see good reason in also liberally applying the other requirements of OCGA § 9-11-55(b) to open default in disciplinary matters, including the requirement to set up a meritorious defense. Finally, the Special Master points to no case law or any Bar Rule that permits partially opening default, and OCGA § 9-11-55, in referring to whether the "case" is in default, seems to contemplate that the default is not considered on a claim-by-claim basis. See OCGA § 9-11-55(a) ("If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default . . . ."). We acknowledge that the absence of clear bar rules on the topic of default can make the determination of whether to open default a difficult question for Special Masters. Even so, the Court hereby rejects the Special Master's report and remands this matter to the State Bar for it to proceed pursuant to Rule 4-208.4, et seq.

*Case remanded. All the Justices concur.*

21